# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE J. SANDERS, | 1:06cv0101 DLB |
| Plaintiff, | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff Ronnie J. Sanders ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income and disability insurance benefits pursuant to Title XVI and Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On June 2, 2006, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff filed his application for supplemental security income and disability insurance benefits on March 25, 2002, alleging disability since March 6, 1998, due to spondylolisthesis with severe back pain and post traumatic stress disorder ("PTSD"). AR 70, 73, 97-106. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 41-44, 46-49, 50. On October 10, 2003, ALJ William Thompson held a hearing. AR 420-458. On January 22, 2004, ALJ Thompson found that Plaintiff was not disabled. AR 13-24. On November 14, 2005, the Appeals Council denied review. AR 5-8.

Hearing Testimony

On October 10, 2003, ALJ Thompson held a hearing in Bakersfield, California. Plaintiff appeared with his attorney, Lawrence Rohlfing. Vocational expert ("VE") Ken Ferra also appeared and testified. AR 420.

Plaintiff testified that he was 52 years old at the time of the hearing. He graduated from high school and tried to go to college. AR 425-426. He is married with three grown children, and he receives a Veterans' Administration ("VA") disability payment for a 50% disability. AR 426. He has no other income. AR 427. Plaintiff received benefits from Social Security, but they were terminated. AR 428.

Plaintiff last worked in 1988, before he received Workers' Compensation for a back injury. AR 429-430. He testified that he cannot work because of the severe pains in his lower back that radiate to his legs, causing numbness and pain. AR 430. He receives treatment for his back at the VA. He takes Motrin and Naprosyn, which cause stomach problems, and has received an injection that didn't help. AR 431-432. He has not had surgery, but his doctors are considering it. Plaintiff is not sure about having surgery because of the risks involved. AR 433.

Plaintiff had physical therapy in 1998 and 1999. He received a TENS unit, which helped. AR 433. The pain only goes away when he lays down and stretches out. AR 433. He sometimes

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

feels good in the morning, but then he tries to do things around the house and the pain gets intense. AR 434.

Plaintiff testified that he had a "slight" heart attack two years ago, and he now receives treatment for his heart from the VA. AR 434. He also had a slight stroke, but it did not cause any lasting effects. AR 436.

Plaintiff thought he could walk about 50-60 feet before the pain comes, and could stand two to three hours on a good day. On a bad day, he can stand for about an hour before the pain causes numbness. AR 440. He thought he could sit for two to three hours before he had to stand. AR 440. He could lift about 20-25 pounds. AR 440.

Plaintiff testified that he is still receiving mental health treatment from the VA. AR 440. He receives therapy, both one on one and in a group, and medication. When asked if the treatment helped, he replied, "It helped me a lot, sir. It helped me a lot." AR 441. He testified that last year he had thought about suicide and tried to commit suicide in 1998. AR 441-442. He explained that he still feels stressed, hopeless, worthless and angry. He receives VA benefits for PTSD. AR 442. He was in the army for two years and then reenlisted for eight years. He was in Vietnam for one and a half years. AR 443. He was stopped from reenlisting again because of a medical condition, and received an honorable discharge. AR 444.

Plaintiff believes that from a mental standpoint, flashbacks might slow him down if he tried to work. AR 445. He has flashbacks where he sees dead people. AR 445.

When questioned by his attorney, Plaintiff explained that he worked on an oil rig after 1988, but couldn't remember. He testified that he has not worked at all since he was granted disability in January 1990. AR 446. This year, he tried to cut grass because he was homeless, but it was too painful and he was unable to finish. AR 447.

Plaintiff testified that he uses the TENS unit three to ten times a month. AR 448. He said he could function "very well" with the TENS unit on, but he still has slight pain. AR 448.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age and education, with no past relevant work. This person could lift 20 pounds occasionally and 10 pounds frequently. He could stand and walk for six hours in a day and could sit without

limitation when not required to stand or walk.  AR 448.  He could occasionally bend, stoop, twist, squat, kneel and crawl, but could not climb ladders or ropes.  He can climb stairs.  He could not work at heights or around hazardous machinery.  He would be better suited for jobs involving relatively simple instructions and one or two step processes, and having relatively restricted contact with the general public.  The VE testified that this person could perform some assembler positions, light and unskilled, of which there are approximately 11,000 in California.  This person could also perform some handpacker positions, light and unskilled, for which there are 3,600 in California.  AR 449.

To this hypothetical, the ALJ added a limitation of relatively restricted contact with coworkers.  This person could work in the presence of others but should not be part of a work team or cooperative work process.  AR 449.  The VE responded that the above numbers were already eroded by 85 percent, and that there would be no additional erosion because those positions are generally individual activities.  AR 449-450.

For the next hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age and education, with no past relevant work.  This person could lift 10 pounds frequently and could move small objects throughout the day.  He could stand and walk for periods not exceeding 30 minutes at a time, and not to exceed two hours a day.  He could sit throughout the remainder of the day.  He could occasionally bend, stoop, twist, squat, kneel and crawl, but could not climb ladders or ropes.  He could not work at heights or around hazardous machinery.  He could perform simple instructions and one- or two-step processes, but could have only restricted contact with the public and coworkers.  AR 450.  The VE testified that this person could still perform the assembler positions and handpacker positions, but at a sedentary level.  In California, there were 2,400 assembler positions available and approximately 200 handpackers positions.  AR 450.

The ALJ asked the VE if his classifications of the positions were consistent with the classification in the Dictionary of Occupational Titles ("DOT"), and he responded that they were.  AR 450-451.

1  Plaintiff's attorney asked the VE whether he believed that eroding the numbers by 85
2  percent was consistent with saying that the positions were consistent with the DOT.  The VE
3  explained that he believed those two statements to be consistent because he took the
4  classification of the occupation and eroded it down by 85 percent to account for the one to two
5  step job limitation.  AR 451.  When asked for the DOT numbers, the VE said that there were
6  over 669 different DOT titles for assembler, and that he didn't have all the titles.  AR 452.  As an
7  example, the VE referred Mr. Rohlfing to plastic hospital products assembler, which has a
8  reasoning level of two.  AR 452.  The VE explained that reasoning level two requires the
9  common sense understanding to carry out detailed, but involved written or oral instructions.  AR
10 453.  Reasoning level one requires the common sense understanding to carry out simple one or
11 two step instructions, deal with standardized situations with occasional or no variables in and
12 from the situations encountered on the job.  AR 453.  The VE testified that he could not identify
13 any positions with a reasoning of level one.  AR 453.

14  Mr. Rohlfing asked the VE to assume an individual of Plaintiff's age, education and past
15 relevant work.  This person has moderate limitations (significant limitations noticeable to
16 coworkers, supervisors and peers, including a limitation in production and pace) in the ability to
17 maintain attention and concentration for extended periods of time.  The VE testified that this
18 person would not be able to perform any of the jobs previously identified.  AR 454.

19  If this individual had a moderate limitation (same definition as above) in the ability to
20 perform activities within a schedule, maintain regular attendance and be punctual within
21 customary tolerances, this person could not perform work.  AR 455.

22  If this individual had a moderate limitation in making simple work related decisions, this
23 person could not work.  AR 455.

24  If this person had a moderate limitation in working in coordination with, or in proximity
25 to, others without being distracted by them, this person could not work.  AR 455.

26  If this person had a moderate limitation in the ability to complete a normal workweek or
27 workday without interruptions from psychologically-based symptoms and in the ability to

28

perform at a consistent pace without an unreasonable number of lengthy rest periods, this person could not work.  AR 455.

If this individual had a moderate limitation in the ability to accept instructions and to respond appropriately to criticism from supervisors, this person could not perform work.  AR 456.

If this individual had a moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, this person could not perform work. AR 456.

If this individual had a moderate limitation in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, this person could not perform work.  AR 456.

Medical Record

On November 6, 1998, the VA issued a rating decision increasing Plaintiff's rating of 30 percent disabled to 50 percent disabled based on PTSD.  AR 387-389.  The VA reviewed a medical report from October 23, 1998.  AR 387.  The rating decision noted that Plaintiff had depressed mood with generalized anxiety, insomnia, irritability, crying spells, diminished libido, diminished appetite, suicidal thoughts, nightmares of combat, and intrusive images and thoughts of Vietnam.  AR 387.  Plaintiff was on medication.  AR 387.  His social interactions were evaluated as "fair," and he had a moderate limitation in activities of daily living.  AR 388.

Plaintiff received mental health treatment from the VA beginning in May 1998, when he was diagnosed with major depression and PTSD.  AR 325.  His medications were increased in September 1998.  AR 302.  In December 1998, a note in his file indicates, "I wonder about malingering in this patient because of his seeming nonchalance about serious psychotic symptoms and the psychological report showing he endorsed a number of 'odd' symptoms which do not fit any particular pattern."  AR 285.  He underwent a neurobehavioral assessment during which there was no evidence of malingering except for inconsistent/non-physiological visual fields .  He was referred to the PTSD clinic and diagnosed with depression and insomnia.  AR 277-278.

Plaintiff attended physical therapy for low back pain and neck pain in April and May 1999, after being in a motor vehicle accident. AR 152-160. He also received physical therapy in 1998, after being in a motor vehicle accident. AR 161-178.

In December 1999, Plaintiff complained that he had been under a lot of stress secondary to legal problems. Plaintiff was vague, but stated that he had suicidal thoughts yet denied a plan. He also vaguely complained of always having auditory hallucinations. AR 270.

In January 2000, he reported that he had been under a lot of stress and had doubled up on his medications. He was referred to the PTSD clinic. AR 269. He reported in October 2000 that his sleep medications were working "okay" but that his antidepressant wasn't helping. AR 263.

In January, March and May 2001, Plaintiff reported that he was doing well on his medications and he had no other complaints. AR 260-262. However, in June 2001, Plaintiff indicated that his mood had been depressed, his appetite had decreased and his energy was low. AR 259. In July 2001, Plaintiff reported that he had only been sleeping for two hours a night and complained of chronic headaches. AR 258.

In May 2002, Plaintiff underwent an MRI of his lumbar spine. The test revealed an increase in degenerative changes since Plaintiff's last MRI in 1997, and bilateral pars defects at L4. AR 149-151.

On June 27, 2002, Plaintiff was evaluated by Michael Musacco, Ph.D. Plaintiff reported that he was diagnosed with PTSD and major depression through the VA clinic in Los Angeles. Upon mental status examination, Plaintiff's affect was irritable, as he complained about his negative experiences with the Disability Evaluation Division. Plaintiff reported that he experiences feelings of sadness, hopelessness and suicidal thoughts, and that he has attempted suicide "many times." Plaintiff would not describe the suicide attempts. He reported flashbacks and nightmares, but would not discuss his symptoms of PTSD. He complained of auditory hallucinations, but was unable to offer specific information. Although Plaintiff reported a wide array of symptoms, his account of his symptoms was generalized and vague and Dr. Musacco was therefore unable to validate Plaintiff's reports. Plaintiff was unable or unwilling to complete tasks measuring his attention and concentration, or brief memory.

Dr. Musacco diagnosed mood disorder, not otherwise specified, and personality disorder, not otherwise specified.  Dr. Musacco suspected that Plaintiff would have difficulty interacting with coworkers, supervisors and the public in light of his irritability and anger.  However, Plaintiff did not appear to suffer from deficits in his intelligence or cognitive functioning that would prevent him from carrying out simple and repetitive work duties.  AR 188-191.

On July 20, 2002, Plaintiff saw Tomas B. Rios, M.D. for a consultive internal medicine examination.  Plaintiff complained of chronic pain in his back and a history of heart problems.  Upon examination, he walked with a noticeable limp on the right side and had some difficulty rising from a seated position.  Breath sounds were diminished at the bases, with no crackles, rhonchi or wheezing.  Examination of his back revealed some tenderness diffusely in the paralumbar area with some palpable spasm in the paraspinous musculature.  Dr. Rios diagnosed degenerative disc disease and coronary artery disease, status post MI.  He opined that Plaintiff should be precluded from activities that require him to perform frequent bending, stooping, crouching or crawling, or very heavy lifting over 25 pounds on an occasional basis and 10 pounds on a frequent basis.  AR 142-145.

Also on July 20, 2002, Plaintiff underwent lumbar spine x-rays which revealed Grade I anterior spondylolisthesis of L4 upon L5 with apparent bilateral L4 spondylolysis.  Significant degenerative changes were shown at the L4-5 disc space.  AR 147.

On September 3, 2002, State Agency physician George W. Bugg, M.D., completed a Mental Residual Functional Capacity Assessment.  Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions.  He was also moderately limited in almost all aspects of understanding and memory, sustained concentration and persistence, social interaction and adaptation.  He was not significantly limited in his ability to remember locations and work-like procedures, to understand, remember and carry out simple instructions, to respond appropriately to changes in the work setting, and to be aware of normal hazards.  Elsewhere in the report, Dr. Bugg opined that Plaintiff could not understand and remember instructions to carry out simple, repetitive tasks, was unable to maintain pace as required by most jobs or sustain

necessary concentration, would interact poorly with other employees and supervisors, would be unable to accept criticism in an appropriate manner, and is poorly adaptive. AR 352-357.

On November 1, 2002, Plaintiff complained that he had been experiencing severe distress and depression due to his medical conditions and family issues. AR 391.

Plaintiff was scheduled for back surgery in December 2002, but opted not to have the procedure. AR 392.

In May 2003, Plaintiff complained of severe anxiety due to being denied SSI benefits and work related disability. He reported that his medications seemed to help. AR 396.

In August 2003, Plaintiff underwent a behavioral health reassessment. He reported that he was homeless and had been doing odd jobs (gardening/lawn mowing) for the past two months. He was diagnosed with PTSD. His GAF was 55. AR 400-401.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of discogenic back pain and mood disorder. However, he found that Plaintiff's mood disorder causes only a mild limitation in his activities of daily living, a moderate limitation in his social functioning, and a moderate limitation in his ability to perform the concentration, persistence and pace required for unskilled work. AR 20. The ALJ also determined that Plaintiff was only partially credible. AR 20.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally and 10 pounds frequently, to stand and walk in combination for at least six hours in an eight hour workday and to sit without limit when not required to stand or walk. He could occasionally bend, stoop and kneel but could not work at heights or around hazardous machinery. Plaintiff would be limited to work involving simple instruction in one or two step processes, and work requiring only limited contact with supervisors, co-workers and the public. AR 21.

As Plaintiff's exertional limitations did not allow him to perform the full range of light work, the ALJ used Medical Vocational Rule 202.13 as a framework for decision making. AR 24. Based on Rule 202.13 and the testimony of the VE, the ALJ concluded that Plaintiff could

perform a significant number of jobs in the national economy, such as assembler and hand-packer.  AR 24.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

10

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (discogenic back pain and mood disorder) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) retains the RFC to perform a significant range of light work. AR 23-24.

Here, Plaintiff argues that the ALJ (1) failed to propound a complete hypothetical to the VE, and failed to consider his testimony on cross-examination; and (2) failed to properly consider Plaintiff's mental impairments.

## DISCUSSION

A.   VE Testimony

Plaintiff alleges two errors related to the VE testimony. First, he argues that the ALJ failed to propound a complete hypothetical because he failed to include limited contact with supervisors in either hypothetical. Second, he argues that the ALJ failed to consider the VE's "retraction" on cross-examination.

1.   Hypothetical Question

"Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422.

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

11

Plaintiff argues that the ALJ's hypothetical questions were incomplete because he failed to include a limitation in contact with supervisors, although such a limitation was found in the RFC. Indeed, the hypothetical questions posed by the ALJ did not include a specific limitation in contact with supervisors. However, both hypothetical questions did include a restriction in contact with coworkers. AR 449, 450. In response to these hypothetical questions, the VE indicated that Plaintiff could perform work in the national economy. AR 449-450.

Defendant argues, and the Court agrees, that a limitation in contact with coworkers fairly includes a limitation in contact with *all* coworkers, whether supervisory or otherwise. Moreover, the ALJ testified that the positions he identified were generally performed individually. AR 449-450. Thus, any error is harmless, at best. *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion).

    2.    Cross-examination

Next, Plaintiff argues that the ALJ failed to consider the VE's testimony on cross-examination. He points to the VE's admission that the occupation he identified from the DOT had a reasoning level of two, and that he could not identify any positions with a reasoning level of one. AR 452-453.

The ALJ determined that Plaintiff was limited to work involving simple instruction in one or two step processes, and this limitation was included in each hypothetical posed to the VE. AR 21, 449-450. In response to the first hypothetical, the VE identified assembly positions, light an unskilled, of which there were 11,000 in California, and hand packer positions, light and unskilled, of which there were 3,600 in California. AR 449. The VE indicated that these numbers were eroded by 85 percent to account for the limitation to one and two step tasks. AR 449-450. In response to the second hypothetical, the VE indicated that the same positions would be available at the sedentary level of exertion (2,400 assembler positions in California and 200 hand packer positions in California). AR 450. The VE indicated that his classification of these positions was consistent with the DOT classification. AR 450-451.

When questioned by Plaintiff's attorney, the VE explained that the positions that he identified were consistent with their classifications in the DOT because he "took the classification of the occupation and eroded it down by 85 percent so that we get down to the jobs that are the one- and two- step jobs within the classification." AR 451. He further clarified that the positions he identified, after the 85 percent erosion, were classified as one- and two- step jobs. AR 451.

Plaintiff's attorney then asked the VE for DOT numbers, to which the VE responded that there were 669 different titles for the assembly position and that he didn't have all of the titles. AR 452. He identified the only one he had at the hearing- assembler, plastic hospital products. AR 452. He then explained that the position had a reasoning level of two, and that he could not identify any position with a reasoning level of 1. AR 453.

It appears that Plaintiff interprets the VE's response as a concession that such positions do not exist. AR 453. However, a review of the exchange reveals that the VE indicated that he did not have all possible titles with him at the hearing and that he was answering the questions based on the limited information he had.

In any event, the ALJ may take administrative notice of any reliable job information, including information provided by a VE. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir.1995). As the Ninth Circuit recently held, "A VE's recognized expertise provides the necessary foundation for his or her testimony [and] no additional foundation is required." *Bayliss*, 427 F.2d at 1218. Therefore, the ALJ was entitled to rely on the VE's testimony and conclude that Plaintiff could perform a substantial number of jobs in the national economy.

B.   <u>Mental Impairment</u>

Plaintiff contends that the ALJ erred in assessing his mental impairments because (1) he improperly rejected the opinion of Dr. Bugg; (2) the mental status examination conducted by Dr. Musacco was incomplete; and (3) he improperly rejected the VA opinions.

//

//

13

1.	Dr. Bugg

Plaintiff argues that Dr. Bugg's opinions were not, as the ALJ found, internally inconsistent. AR 21. He also contends that the record supports Dr. Bugg's findings.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). Of course, the ALJ can reject any opinion that he finds unsupported by the evidence.

Dr. Bugg was a non-examining State Agency physician, and his opinion is entitled to the least amount of weight. The ALJ reviewed his opinion, but gave it little weight because it was "internally inconsistent." AR 21. Indeed, as the ALJ explained, in one section of his report, Dr. Bugg indicated that Plaintiff was not significantly limited in his ability to understand, remember and carry out simple instructions, to remember locations and work-like procedures, to respond appropriately to changes in the work setting, and to be aware of normal hazards. Yet in another section, Dr. Bugg opined that Plaintiff could not understand and remember instructions to carry out simple, repetitive tasks, was unable to maintain pace as required by most jobs or sustain necessary concentration, would interact poorly with other employees and supervisors, was unable to accept criticism in an appropriate manner, and was poorly adaptive. AR 352-357. Similarly, Dr. Bugg's conclusion that Plaintiff was severely limited was inconsistent with his assessment of no more than moderate limitations in any category. AR 352-354.

Plaintiff argues that the ALJ failed to recognize the "patent proposition" that an individual can have no significant limitations in his ability to remember and carry out simple instructions, but nonetheless have significant limitations in the maintaining attention and concentration and other work-related tasks. While this may be true, Plaintiff misunderstands Dr. Bugg's inconsistency. Rather than set forth a discrepancy that could be reconciled, Dr. Bugg set forth two wholly inconsistent opinions *for the same task,* i.e., Plaintiff's ability to remember,

understand and carry out simple tasks. Dr. Bugg also painted contrasting pictures of Plaintiff in one, he had no more than moderate limitations in any category; in the other, Plaintiff was severely limited in almost all work-related tasks. The ALJ is responsible for resolving conflicts in the medical evidence, and was therefore entitled to discredit Dr. Bugg's inconsistent opinion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

2. Dr. Musacco

Next, Plaintiff contends that the mental status examination performed by Dr. Musacco was incomplete, and that the ALJ failed to address this deficiency. Specifically, Plaintiff argues that Dr. Musacco's assessment does not contain administration of serial sevens "as recommended by the Commissioner." Opening Brief, at 9.

In support of his argument, Plaintiff cites 12.00(C) of the Listing of Impairments relating to the assessment of severity of mental disorders. The listing explains that in mental status examinations, "concentration is assessed by tasks such as having you subtract serial sevens or serial threes from 100."

Plaintiff's argument fails for two reasons. First, there is nothing in 12.00(C), or any other governing statute or body of law, that makes serial sevens a mandatory part of assessing concentration. Indeed, the use of the phrase "such as" in 12.00(C) demonstrates that serial sevens is just one example of numerous ways to measure a claimant's concentration.

Second, even assuming that Dr. Musacco was required to administer serial sevens, he could not do so given that Plaintiff was "unwilling or unable to complete tasks measuring his attention and concentration or brief memory." AR 190. Throughout the examination, Plaintiff was hostile and angry and would not elaborate on many of his alleged impairments. AR 190. Dr. Musacco explained that although Plaintiff reported a wide array of symptoms, "his account of his symptoms was generalized and vague." AR 190. Dr. Musacco diagnosed mood disorder, not otherwise specified, and personality disorder, not otherwise specified, and explained that although Plaintiff did not appear to have any deficits in intelligence or cognitive functioning that would prevent him from carrying out simple and repetitive work duties, he needed additional information to determine the severity of Plaintiff's symptoms with certainty. AR 191.

1	Insofar as Plaintiff argues that the ALJ erred in crediting Dr. Musacco's opinion, his
2	argument fails.  The ALJ gave substantial weight to Dr. Musacco's finding that Plaintiff would
3	have difficulty interacting with coworkers, supervisors and the public, but could perform simple
4	and repetitive work duties.  AR 21.  The ALJ found that his opinion was supported by the
5	medical evidence and the record as a whole.  Dr. Musacco's finding conflicted with Dr. Bugg's
6	finding, and it was the ALJ's duty to resolve that conflict.  *Andrews v. Shalala*, 53 F.3d 1035,
7	1041 (9th Cir.1995); *Magallanes v. Bowen*, 881 F.2d 747, 751, 755 (9th Cir. 1989).  Dr.
8	Musacco's opinion was also entitled to greater weight than the opinion of Dr. Bugg, a non-
9	examining physician.  *Andrews*, 53 F.3d at 1041 (greater weight is generally afforded examining
10	physicians over non-examining physicians).  Given the medical evidence, the Court cannot
11	conclude that the ALJ's determination was not supported by substantial evidence.
12	      3.	VA's Findings
13	Finally, Plaintiff argues that the ALJ disregarded, without explanation, the findings of the
14	VA regarding his PTSD and the extent of his disability.  Plaintiff points to the VA ratings
15	decisions and the increase in his disability from 30 percent to 50 percent as of May 27, 1998.  AR
16	388.
17	A VA disability rating does not compel the SSA to reach an identical result.  *McCartey v.*
18	*Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  However, the ALJ must consider the VA's
19	findings in reaching a decision.  *Id.*  In fact, an ALJ "must ordinarily give great weight to a VA
20	determination of disability" because of the similarities of the two federal programs.  *Id.*  The ALJ
21	may give less weight to a VA disability rating if he "gives persuasive, specific, valid reasons for
22	doing so that are supported by the record."  *Id.*
23	In his opinion, the ALJ explained that Plaintiff failed to establish that his PTSD was a
24	severe impairment.  AR 20.  He stated:
25	> The treatment records from the VA as well as the examination report from Dr. Musacco
26	> fail to document any limitations caused by the claimant's alleged PTSD nor any specific
> symptoms of his PTSD.  The Ratings Report from the VA from November 6, 1998, is
> based on a single VA mental health record dated October 23, 1998.  There are numerous
27	> reports from the VA from the years 2000 through 2001 which show that the claimant
> received only medication refills and was doing well on his psychiatric medications.
28

AR 20.

Therefore, contrary to Plaintiff's assertion, the ALJ considered the VA's ratings decision and gave specific, valid and persuasive reasons for rejecting it. AR 20. Plaintiff points out that the VA disability rating and Dr. Bugg's opinions are consistent. Again, however, the courts do not have the responsibility for weighing the evidence and resolving conflicts therein, that responsibility belongs to the Commissioner alone. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). In any event, the Court must uphold the ALJ's decision were the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Plaintiff's argument is without merit.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff Ronnie J. Sanders.


IT IS SO ORDERED.

Dated:  **November 16, 2006**              **/s/ Dennis L. Beck**
3b142a                                           UNITED STATES MAGISTRATE JUDGE